IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| John Fitzgerald Joe, Sr., | ) | Civil Action No.  8:14-cv-01221-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge [Doc. 7]; and the Order of reference signed by the Honorable Timothy M. Cain on April 3, 2014 [Doc. 9].  Plaintiff, proceeding pro se, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, the decision of the Commissioner affirmed.

## PROCEDURAL HISTORY

In June 2009, Plaintiff filed an application for DIB alleging disability beginning December 1, 2007.[1]   [R. 199–207.]  Plaintiff's DIB claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 90–93,

---

[1]Plaintiff also filed an application for supplemental security income [R. 208–210], but that claim was denied because Plaintiff's "countable income exceed[ed] title XVI FBR and OSS if applicable" [*see* R. 211].

110–113, 115–116.]   Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on July 8, 2010, ALJ Frederick McGrath ("ALJ McGrath") conducted a de novo hearing on Plaintiff's claim.  [R. 22–38.]

ALJ McGrath issued a decision on August 19, 2012, finding Plaintiff was not disabled under the Social Security Act ("the Act").  [R. 94–106.]  On February 16, 2011, the Appeals Council remanded the case to the ALJ for further consideration.  [R. 107–109.] On remand, ALJ Walter C. Herin, Jr. ("ALJ Herin" or "the ALJ") held a new hearing on July 13, 2011 [R. 39–89]; on October 5, 2011, the ALJ issued a new decision, again finding Plaintiff was not disabled under the Act [R. 7–21].   The Appeals Council denied review of the October 5, 2011 decision.  [R. 1–5.]   On July 1, 2013, however, this Court remanded the case to the Commissioner.  [R. 902–912.]   On September 23, 2013, ALJ Herin held another hearing. [R. 819–881.]   ALJ Herin issued a new decision on October 11, 2013, again finding Plaintiff was not disabled under the Act. [R. 803–818.]

At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2008 and had not engaged in substantial gainful activity during the period from his alleged onset date of December 1, 2007 through his date last insured.  [R. 805, Findings 1 & 2.]   At Step 2, the ALJ found Plaintiff had the following severe impairments: osteoarthritis, left wrist tenosynovitis, depression, and post traumatic stress disorder ("PTSD").  [R. 806, Finding 3.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 806, Finding 4.]  The

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

ALJ specifically considered Plaintiff's mental impairments under Listings 12.04 and 12.06.

[R. 806–807.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the

ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform simple, routine, repetitive tasks at the light exertional level as defined in 20 CFR 404.1567(b) except for work requiring lifting or carrying more than 20 pounds; lifting or carrying of 11 to 20 pounds more than occasionally; lifting or carrying of 10 pounds or less more than frequently; ongoing interaction with the public; climbing of ladders, ropes, or scaffolds; more than occasional stooping, crouching, kneeling, crawling, or climbing of stairs or ramps; or more than frequent balancing.

[R. 807, Finding 5.]  Based on this RFC finding and the testimony of a vocational expert

("VE"), the ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant

work as a automobile salesman and general manager/automobile specialty service.  [R.

816, Finding 6.]  However, based on his age, education, work experience, RFC, and the

VE's testimony, there were jobs that existed in significant numbers in the national economy

that Plaintiff could have performed.  [R. 817, Finding 10.]  On this basis, the ALJ found

Plaintiff was not under a disability, as defined in the Act, at any time from December 1,

2007, the alleged onset date, through December 31, 2008, the date last insured.  [R. 817,

Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision and the Appeals

Council declined review.  [R. 781–784. ]  Plaintiff filed this action for judicial review on April

2, 2014.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred as a matter of law by (1) failing to afford appropriate weight to the decision of the Veterans Administration ("VA") rating Plaintiff's PTSD at 50 percent disability; (2) disregarding records after the date last insured ("DLI"); and (3) finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [Doc. 27.]

The Commissioner, on the other hand, contends the ALJ considered the VA disability rating and found it unpersuasive; appropriately considered evidence dated after the DLI; and properly found that Plaintiff's impairments, either singly or in combination, did not meet listing requirements for disability. [Doc. 31.]

## STANDARD OF REVIEW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not

4

construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Court's Scope of Review in Social Security Actions**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result

as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence

or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

and that there is good cause for the failure to incorporate such
evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. §

405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &
Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme
Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.
*See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply
the more stringent *Borders* inquiry.

8

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699

F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical

and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v.*

14

*Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

15

claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and

16

West Virginia), Social Security Ruling (SSR) 88-13, Titles II
and XVI: Evaluation of Pain and Other Symptoms:

...

> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

17

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Consideration of VA Disability Rating

Plaintiff alleges disability due to PTSD, arthritis, candidiasis, concentration, depression, forgetfulness, and left eye injuries. [R. 93.] Plaintiff contends the ALJ improperly disregarded the rating decision issued by the VA in this matter. [Doc. 27 at 8–11.] More specifically, Plaintiff argues the ALJ erred in speculating about why Plaintiff did not receive a higher rating and implying Plaintiff would need a higher rating for the ALJ to consider his impairment severe. [*Id.* at 9.] Plaintiff further contends the ALJ erred by focusing on the GAF score on occasion to question the validity of the VA rating. [*Id*. at 10.] The Commissioner argues that the ALJ performed an appropriate analysis to support the finding that the VA's disability rating was entitled to little weight. [Doc. 31 at 12–13.] Upon review, this Court agrees with the Commissioner.

### *The VA Disability Rating*

The Department of Veterans Affairs issued a decision dated June 9, 2011, granting Plaintiff's service connection for PTSD with depression (claimed as fatigue or mental condition) with an evaluation of 50 percent effective July 18, 2007. [R. 224–227.] The VA explained that an evaluation of 50 percent is assigned for occupational and social impairments with reduced reliability and productivity due to certain symptoms. [R. 227.] The VA also found that a higher evaluation of 70 percent was not warranted. [*Id.*]

### *The ALJ's Consideration of the VA Rating*

The ALJ explained the weight he assigned to the VA decision as follows:

> In June 2011, the Department of Veterans Affairs issued a rating decision finding the claimant had a 50 percent impairment rating for PTSD with depression and an effective date of July 18, 2007. The 2007 date was based upon the receipt of the original claim and its denial. The Introduction to the VA decision said, "Since our last review of your claim, we received additional evidence on October 12, 2010." The evidence considered included VA exam, 9/10/10 (this examination is at Exhibits 9F and 14F [partial duplicate]); reports from Social Security received 10/12/10; and review of all other evidence of record (specifics not provided). In the Reason for Decision section, the reviewing officer referred to new, clarifying medical evidence and said relaxed standards were used for determining fear of hostile military activity and the clinical findings on exam were liberally interpreted. The VA rating was assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships (Exhibit 8D).
>
> The District Court correctly pointed out that the claimant's claim for VA benefits had previously been rejected (Exhibits

19

9A, page 7, and 8D, page 4). The evidence fails to document when the claimant's claim for VA benefits was previously rejected; however, the VA decision showed July 18, 2007 as the date of receipt of the original claim. That denial decision was not submitted into evidence. All that can be clearly deduced from the prior denial is that at some time after July 18, 2007 and prior to June 9, 2011, the date of the rating decision, a reviewing officer determined the medical evidence before him did not meet the criteria for awarding a disability rating.

*** 

First, a couple of observations regarding the VA rating decision itself must be made. The rating decision did not grant a 70 or 100% disability rating or unemployability, which is within the scope of the VA. The rating decision itself used the terms "relaxed standards" and "liberal interpretation," suggesting the decision was based, at least in part, on policy issues rather than on an objective weighing of the evidence. The Introduction to the VA decision said, "Since our last review of your claim, we received additional evidence on October 12, 2010." The evidence considered included the VA exam dated 9/10/10 (this examination is at Exhibits 9F and 14F [partial duplicate]); reports from Social Security received 10/12/10; and review of all other evidence of record (specifics not provided). The September 10, 2010 examination did not indicate the level of severity indicated therein existed in 2007. I've reviewed the Social Security medical records for the period through October 2010 and find only V A records, a couple of emergency room records unrelated to a mental impairment, and State Agency medical and psychological consultant opinions (those opinions are not supportive of finding a disabling impairment). The "all other evidence of record" is unknown.

The only medical evidence discussed in the rating decision is directly from the September 10, 2010 examination.

*** 

. . . Comparing the symptoms related to finding a 50% impairment with the medical evidence cited by the reviewing officer, the medical evidence cited does not support finding the symptoms related to a 50% impairment rating. In fact, a GAF rating of 60 is only one point away from a finding of <u>mild</u>

20

symptoms.   The rating decision clearly suggests relaxed standards and a liberal interpretation influenced the reviewing officer's decision.   Again, no other medical evidence was discussed in the VA rating decision.  Before even considering the other evidence of record as it relates to the VA rating, I find the VA rating is only weakly internally supported.

The evidence of record for the period at issue (December 1, 2007, through December 31, 2008) contradicts finding the severe symptoms stated in the rating decision existed for a continuous period of 12 months or longer.  For example, the earliest mental health progress note of record, dated December 3, 2007, showed the claimant's short and long term memory was intact; concentration/attention was good; impulse control was good; insight and judgment were good; and ability for abstract thinking was intact.  His thought process was linear and goal directed, and thought content was appropriate.  The claimant's affect was bland but not blunted, and his speech was soft and spontaneity was limited but not circumstantial, circumlocutory, or stereotyped.  There was no mention of panic attacks (Exhibit 3F, pages 137-140).   Other mental status examinations or observations through December 31, 2008 also did not show the severe symptoms mentioned in the rating decision (See Exhibit 1F, pages 34, 106, and 121-124).  The rating severity is also inconsistent with the claimant's strengths, interests, and activities (See below discussion). I also note that at the first hearing, the claimant stated he had no symptoms from his PTSD as long as he was taking his medications and was not meeting new people.  I find the rating determination is unpersuasive for the period under consideration.

[R. 812–814.]

### *Discussion*

While a VA disability determination is not binding on the Commissioner, it can nevertheless be entitled to substantial weight, and in determining whether a claimant is entitled to disability benefits, an ALJ should explain the consideration given to a VA disability decision.  *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 343–44 (4th Cir. Nov. 9, 2012) (holding that "the SSA must give substantial weight to a VA disability rating"); *see*

21

*also* SSR 06–03P, 2006 WL 2329939, at * 7 (providing that the ALJ "should explain the consideration given to [the VA disability determination] in notice of decision . . ."); *Kowalske v. Astrue*, No. 10–339S, 2012 WL 32967, at *4 (W.D.N.Y. Jan. 6, 2012) (noting that a VA determination is itself entitled to at least some evidentiary weight in addition to the other record evidence, and that the adjudicator should explain the consideration given to this decision); *Jamiah v. Astrue*, No. 1:09-1761-AJB, 2010 WL 1997886, at *16 (N.D. Ga. May 27, 2010) (noting the significance of a VA determination and that the ALJ must state specifically the weight accorded each item of evidence and the reason for his decision). Under *Bird*, the Commissioner may assign less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.  699 F.3d at 343.

In this case, the ALJ articulated his reason for assigning less than substantial weight to the VA rating.  As an initial matter, the ALJ noted that the VA examiner reconsidered Plaintiff's previously denied claim based on an exam conducted on September 10, 2010 and reports from Social Security received October 12, 2010 and that, based on that new clarifying evidence, used relaxed standards for determining fear of hostile military activity and liberally interpreted clinical findings on exam.  [R. 812.]  The ALJ explained that "nowhere in the rating decision or the evaluation did the rater or examiner suggest the severity of those symptoms existed in 2007 or through December 31, 2008, the date the claimant's disability insurance coverage expired."  [R. 812.]  Moreover, the ALJ concluded that it could be clearly deduced from the prior denial of Plaintiff's VA claim that "at some time after July 18, 2007 and prior to June 9, 2011, the date of the rating decision, a reviewing officer determined the medical evidence before him did not meet the criteria for

22

awarding a disability rating." [*Id*.] While the ALJ explained the different standards employed by the VA versus the SSA in determining disability, finding that the VA rating of 50 percent is not readily transferable to the SSA's definition of disability, the ALJ succinctly explained his consideration of the VA's decision, which relied on evidence outside the time period relevant to the ALJ's decision; explained his consideration of the evidence of record for the time period at issue; and concluded that the decision of the VA did not support a finding of disability during the relevant time period. [R. 812–813] Accordingly, the ALJ found the "rating determination is unpersuasive for the period under consideration." [R. 814.] Upon review, the Court finds the ALJ clearly demonstrated and articulated his reasoning for giving less weight to the VA disability rating in accordance with the requirements of *Bird*.

**Consideration of Evidence after DLI**

Plaintiff contends the ALJ disregarded all of Plaintiff's medical evidence after his DLI and that these records contain substantial evidence of the severity of Plaintiff's impairments. [Doc. 27 at 11–13.] Plaintiff argues the ALJ was "required to consider whether there was linkage between the pre- and post-DLI records" in light of the fact that Plaintiff obtained treatment prior to his DLI. [*Id*. at 12.] Plaintiff suggests that "the likelihood of [Plaintiff's] PTSD being just as severe as indicated in his records post-DLI is great and the fact that he does not have more records before DLI can be attributed to his self-medicating efforts with alcohol and drugs, which, in themselves, evidence the severity of his PTSD at that time." [*Id*. at 13.] The Commissioner argues the ALJ appropriately

considered evidence dated after Plaintiff's DLI.  [Doc. 31 at 13–14.]   Upon review, this

Court agrees with the Commissioner.

### The ALJ's Consideration of Post-DLI Evidence

In considering the evidence of record, the ALJ noted that:

> I have carefully considered the entire record, particularly the
> medical records in Section F of the folder.  I find the following
> exhibits cannot be reasonably related back to the period
> through December 31, 2008: 2F, 3F (in part), 7F, 8F, 9F, 10F,
> 11F, 12F, 13F, 14F, 15F, 16F, 17F, 18F, 19F, 20F, and 21F (I
> note the last three exhibits were submitted into evidence
> subsequent to the remand; they pertain to the periods: July 25,
> 2011 through July 22, 2013; April 17, 2012; and August 1,
> 2012 through August 20, 2013, respectively).   All of these
> exhibits fail to document the nature and severity of the
> claimant's impairments during the period at issue, i.e.,
> December 1, 2007 through December 31, 2008.  The issue of
> my consideration of relevant evidence was raised before the
> District Court.  The Court stated a spot check of the exhibits
> did not reveal some obviously relevant record, which had been
> disregarded (Exhibit 9A, pages 7-8).  In view of the Court's
> analysis of the possible relevance of the later documents, I
> again reviewed the above cited exhibits, including the new
> exhibits, in detail and again find they do not reasonably relate
> back to the period under consideration.  I give no weight to
> these exhibits, except the one noted exhibit, which is
> considered to the extent it can be reasonably related back to
> the period under consideration.

[R. 808.]

### Discussion

For a claimant to establish eligibility for DIB, he must demonstrate two essential

elements: (1) a disability, which is defined as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment . .

. which has lasted or can be expected to last for a continuous period of not less than 12

months," 42 U.S.C. § 423(d)(1)(A); and (2) a disability at the time the claimant has disability

24

insurance status, *id.* § 423(a)(1)(A); 20 C.F.R. § 404.131(a).   Thus, a claimant must establish the presence of a disability prior to the last day of his disability insurance status. *Johnson v. Barnhart*, 434 F.3d 650, 655–56 (4th Cir. 2005).

Although the claimant for DIB must establish the presence of a disability prior to his last date insured, medical evidence produced after the DLI is generally admissible if such evidence "permits an inference of linkage with the claimant's pre-DLI condition."  *Bird*, 699 F.3d at 341.  Indeed, the Fourth Circuit Court of Appeals noted in *Bird* that often the "most cogent proof" of a claimant's pre-DLI disability comes from retrospective consideration of subsequent medical records. *Id.* (citing *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)).  *Bird* further provides that the subsequent medical evidence need not include a retrospective diagnosis so long as the treatment related to the claimant's "history of impairments."  *Id.*  Additionally, *Bird* holds that such retrospective medical evidence "is especially appropriate when corroborated by lay evidence," including testimony of a claimant about his pre-DLI condition.  *Id*. at 342.

In this case, contrary to Plaintiff's assertions, the ALJ expressly considered the evidence dated after Plaintiff's DLI and found that the evidence failed to document the nature and severity of Plaintiff's impairments during the period at issue, *i.e.*, December 1, 2007 through December 31, 2008.  [R. 808.]  A cursory review of the evidence dated after Plaintiff's DLI include, but are not limited to, the following findings: normal psychiatric findings, normal behavior, and normal affect and mood in April 2010 [R. 678]; appropriate behavior, appropriate level of consciousness, and alert and oriented to person, place, and time in July 2010 [R. 685]; normal findings on psychiatric exam with normal behavior in July

2010 [R. 688]; normal speech, behavior within normal limits, anxious, mildly constricted affect, linear and goal directed thought process with appropriate thought content, fair attention and concentration, nonrestorative sleep, poor appetite, and some symptoms of depression and anxiety in September 2010 [R. 692]. The record evidence establishes that Plaintiff suffers from PTSD. However, even though Plaintiff challenges the ALJ's finding Plaintiff was not under a disability as defined in the Act, Plaintiff fails to explain how or why the post-DLI evidence supports a finding of disability during the relevant time period. The ALJ clearly considered the post-DLI evidence and found they deserved no weight, except for one noted exhibit that was considered to the extent it could be reasonably related back to the period under consideration. Plaintiff's argument that the ALJ failed to consider this post-DLI evidence is without merit.

**Listing Analysis**

Plaintiff contends the ALJ erred in failing to properly assess the medical records in this matter which support an adjudication of disability on the basis of Listing 12.06 alone [Doc. 27 at 13–16.] The Commissioner contends Plaintiff appears to ignore the ALJ's statements that specific consideration was given to listings 12.04 and 12.06 and that there is no evidence which demonstrates the criteria of the listings. [Doc. 31 at 14.] Upon consideration, this Court agrees with the Commissioner.

To determine whether a claimant's impairments meet or equal a listed impairment, the ALJ identifies the relevant listed impairments and compares the listing criteria with the evidence of the claimant's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (stating that without identifying the relevant listings and comparing the claimant's symptoms to the listing criteria, "it is simply impossible to tell whether there was substantial

26

evidence to support the determination"); *Beckman v. Apfel*, No. WMN-99-3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000) (unpublished opinion) ("In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." (quoting *Cook*, 783 F.2d at 1172)).

### Criteria of Relevant Listing

Listing 12.06 reads as follows:

> In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> A. Medically documented findings of at least one of the following:
>
> > 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
> >
> > > a. Motor tension; or
> > >
> > > b. Autonomic hyperactivity; or
> > >
> > > c. Apprehensive expectation; or
> > >
> > > d. Vigilance and scanning;
> >
> > Or
> >
> > 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Or

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

### *The ALJ's Listing Analysis*

The ALJ, in analyzing Plaintiff's ability to meet or medically equal Listing 12.06, found that Plaintiff's mental impairments, singularly or in combination, failed to meet both B and C criteria. The ALJ explained as follows:

As shown in Finding 5, the claimant does not have an impairment or a combination of impairments which meets or equals any section of the Listing of Impairments. I carefully considered the criteria of the Listings applicable to the

claimant's impairments and find his impairments, individually or in combination, do not meet or equal such criteria.

\*\*\*

In general terms, the claimant's mental impairments, singularly or in combination, impose the following general restrictions: activities of daily living - mild; social functioning - moderate; concentration, persistence or pace - moderate; and he has not had any episodes of decompensation of an extended duration. The claimant does not have a mental impairment or combination of mental impairments meeting the "C" criteria for any section of the mental Listing of Impairments. Since the assessed categories play an integral role in determining the claimant's residual functional capacity, they are more fully discussed in Finding 5, *infra*.

[R. 806.]

In Finding 5, the ALJ explained his findings as follows:

In September 2009, State Agency medical and psychological consultants reviewed the records and assessed the severity of his impairments. The medical consultants concluded the claimant did not have a severe physical impairment through December 31, 2008, the day the claimant's disability insurance coverage expired. A psychological consultant concluded there was insufficient evidence to establish a mental residual functional capacity for the date the claimant's coverage expired. In January 2010, consultants affirmed the September 2009 assessments as written (Exhibits 4F, 5F, and 6F). The consultants referenced specific medical evidence supporting their conclusions. The consultants have broad knowledge of and experience in applying Social Security regulations, which the VA examiner and reviewing official do not have. Their opinions are therefore entitled to significant weight if supported by the evidence of record. Based upon my review of the medical record, I find the consultants' opinions are consistent with the medical records existing at the time of their reviews; therefore, I give their opinions considerable, but not controlling, weight for the time periods considered.

At the 2011 hearing, the claimant reported a wide range of daily activities. He stated he could drive, live by himself, dress himself, perform his personal care tasks, grocery shop once a

29

month, stop at stores to buy items, wash his laundry, vacuum, mop, sweep, take out the trash, clean his bathroom, put his clothes away, and do some yard work.

At the 2013 hearing, the claimant again reported a wide range of daily activities. He said his nephew spent about 60 nights a year at the claimant's house. He testified he has a driver's license and drove about once a day; and he sees his children every three months. He makes a lot of small trips to the store for small things. The claimant can perform his personal care tasks independently, prepare meals, shop for groceries, wash and fold clothes, mop and sweep floors, wash dishes, take out the trash, clean the bathroom, make his bed, and lie in a chair.

In August 2008, the claimant reported he was walking and participating in more activities. He was doing push-ups for each day of abstinence and was up to 30 push-ups a day. In October 2008, the claimant said he was doing 55 push-ups a day, walking an hour a day, doing yard work, and developing new friends at church (Exhibits 1F and 3F).

Medical records through December 31, 2008 document a variety of strengths, interests, and activities. His strengths included: physical health, social skills, spiritual beliefs, and communication skills. His interests included: outdoor activities, sports, games, music, arts and crafts, exercise, movies, television, computers, community events, and volunteer work. His activities included: watching various legal shows on television, watching basketball, football, and baseball on television, reading the local newspaper, fishing, attending and being active in the local church, reading the Bible, walking a lot, yard work (his, his mother's, and other houses in the area), exercise, visiting his mother, meeting new friends, attending a family picnic on Memorial Day, and doing home improvement work (Exhibit 1F, pages 38, 45, 46, 51, 52, 53, 55, 58, 87, 91, 92, 102, 114, 117, 127, 128, 129, 132, 145, 156, 161, and 171; and Exhibit 3F, pages 117, 127, and 130).

In a July 2009 function report, the claimant indicated he lived alone in a house. He could watch television, prepare simple meals, wash laundry, clean, walk, ride in a car, shop for food, handle monetary affairs, and talk on the telephone (Exhibit 4E).

> In consideration of the medical evidence discussed in Step One, as well as the other objective evidence discussed in Step Two, I find my mental severity rating as stated in Finding 4 is consistent with the evidence of record.

[R. 815–816.]

### *Discussion*

Plaintiff challenges the ALJ's findings with respect to paragraphs A and B of Listing 12.06.  [Doc. 27 at 13–18.]   The Commissioner argues that it is plainly evident from the text of the administrative decision that the ALJ considered the combination of Plaintiff's impairments in making his determination that Plaintiff does not meet or equal Listing 12.06.  [Doc. 31 at 15.]  Because the ALJ only made findings with respect to paragraph B, the Court's review is limited to the ALJ's findings with respect to this paragraph.  Again, the Plaintiff must show that he meets both paragraphs A *and* B to meet or equal Listing 12.06.

The regulations provide that the burden of establishing disability under the Listings is on the claimant.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(c); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  It is not enough that the claimant has the diagnosis of a listed impairment; the claimant must also evidence the requirements for the listing of that impairment. 20 C.F.R. § 404.1525(d); *see Bowen v. Yuckert*, 482 U.S. 137, 146 and n. 5 (1987) (noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition).  Merely "coming close" to meeting a listing is not enough to establish equivalence, and a claimant cannot establish equivalence merely by showing that the overall functional impact of her combination of impairments was as severe as that of a listed impairment.  *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  Instead,

the claimant must present medical findings equal in severity to every criterion in a listing. *See id.*

Upon review, the Court finds the ALJ's conclusion regarding Plaintiff's ability to meet Listing 12.06 is supported by substantial evidence. As an initial matter, the ALJ considered the evidence of record, including Plaintiff's testimony and activities of daily living, and explained his reasoning for determining Plaintiff was either mildly or moderately restricted when it came to the four functional areas considered in paragraph B such that the Court could perform an adequate review. While Plaintiff provides his findings with respect to the weight that he assigns to the evidence, concluding that he has "marked difficulties" in activities of daily living; social functioning; and concentration, persistence, or pace, Plaintiff fails to direct the Court to any evidence that was not already considered and weighed by the ALJ. Further, the regulations provide that "[a] marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C (citing 20 C.F.R. §§ 404.1520a and 416.920a). Plaintiff has cited no evidence of record showing that Plaintiff's ability to function independently, appropriately, effectively, and on a sustained basis has been seriously compromised. The fact that Plaintiff has reweighed the same evidence weighed by the ALJ and come to a different conclusion does not create reversible error dictating remand by this Court. *See Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

## **CONCLUSION**

Wherefore, based upon the foregoing, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

August 14, 2015
Greenville, South Carolina